## Carnes v. DeWitt Bank & Trust Company.

4-6214

147 S. W. 2d 1002

Opinion delivered February 24, 1941.

*Chris Carpenter*, for appellant.

*Botts & Botts*, for appellee.

Griffin Smith, C. J. G. C. Carnes and Bertie Carnes [1] borrowed $508.65 of DeWitt Bank & Trust Company and gave three notes dated November 26, 1938.[2] As security they mortgaged certain real property upon

---

[1] Husband and wife.

[2] One note was for $308.65, due December 15, 1938, one was for $100, due January 15, 1939, and one was for $100, due February 15, 1939.

which Riceland Federal Savings & Loan Association had a prior mortgage. The loan association was made a defendant [3] in a suit filed by the trust company August 1, 1939, to collect from G. C. and Bertie Carnes.[4] Foreclosure was decreed September 25, 1939. G. C. Carnes had left the state and an attorney *ad litem* was appointed to represent him. There was publication of a warning order.

Bertie Carnes appeared in open court when the foreclosure decree was rendered and requested that sale be postponed until after January 1, 1940. Apprehending she would be unable to meet the obligation January 1, Mrs. Carnes (December 4, 1939) petitioned for further delay, and the date was advanced to February 1. Following sale at that time Mrs. Carnes complained that notice of sale had not been published twenty days. The court sustained the exception and directed readvertisement.

March 25, 1940—four days after sale—Mrs. Carnes again filed exceptions. She alleged that when the court decreed foreclosure proof of publication of order warning G. C. Carnes, and the attorney *ad litem's* report, had not been filed; that in fact they were not received by the clerk until March 25. The record sustains this allegation, although it further appears there had been timely publication and that the attorney *ad litem* had discharged all of his duties except making a report.

It was further alleged by Mrs. Carnes that the decree did not direct foreclosure of the loan association's first mortgage; that she appeared at the sale and offered to pay debt, interest, and cost incidental to the second mortgage, but was told her bid should be sufficient to include both mortgages. She asked that the excess of $1,027.32 be declared a part of the bid under the second mortgage and that it be paid to her as an excess.

*First.*—The appeal was filed September 25, 1940. This was a year after the final decree of foreclosure, but

[3] The officer's return shows service of summons on the president of the loan association, a corporation.

[4] The property sold for $1,644.53 at the commissioner's sale March 21, 1940. Of this sum $617.21 went to the trust company and $1,027.32 to the loan association.

within six months of the order overruling exceptions to the commissioner's report. The September decree recites that the cause was heard upon the verified complaint, affidavit for warning order as to G. C. Carnes, appointment of attorney *ad litem*, acceptance of appointment by the attorney, and his report, and the original note and mortgage sued on. There was a further finding that each defendant (except G. C. Carnes) had been served with summons more than thirty days before the term of court, and that Carnes had been "duly and legally warned of the pendency of the cause by the issuance and publication of a warning order published in the DeWitt *Era-Enterprise* [5] . . . for more than 30 days before the first day of the term of court, and each and all of said defendants are legally warned of this cause of action and are before this court."[6]

The decree directed that proceeds arising from the sale should be applied (a) to pay costs, (b) to pay indebtedness due the loan association, (c) to payment of the amount due plaintiff by defendants, and (d) the remainder, if any, to G. C. and Bertie Carnes.

Although the loan association was brought into the proceeding as a defendant, the last paragraph in the decree is: "All right, title, interest, or equity that any or all parties to this suit have in or to said property shall be forever foreclosed, and the purchaser shall receive all title, right, claim, interest, or equity that all parties to this suit, and each of them, might have in or to said property, or any part thereof, free from any and all claims, equities, titles, or liens that they might have in or to said property."

Mrs. Carnes testified that at the sale she made a bid equal to the debt of the trust company, but "was not prepared to make a bid on the property that would take care of the amount due the Riceland Federal Savings & Loan Association."

---

[5] A newspaper having a general and *bona fide* circulation in Arkansas county.

[6] The decree contained the following recital: "The court further finds that the defendant, Riceland Federal Savings & Loan Association, has a prior and paramount lien against said property, and that the proceeds arising from a sale of the same should be subject to the rights and equities of the said . . . Association."

The commissioner testified he made the sale under authority of the foreclosure decree as he understood it; that R. H. Maddox[7] gave him information as to the amount due the loan association; that the bid by Maddox included both debts, interest, and cost, and that it was accepted.

R. H. Maddox testified that at the sale he made a statement that he had a letter from the loan association "indicating the amount that was owed to that institution," and that while he did not suggest to the commissioner how the sale should be conducted, his bid included the Riceland debt.

Mrs. Carnes was asked if she made objection "to the amount due the Riceland Federal Savings & Loan Association being included in the sale of the property," and gave an affirmative reply.

There is no evidence denying that the loan association's debt was due, nor is there a contention that the amount mentioned by Maddox in the letter he received from the association was incorrect. Effect of Mrs. Carnes' testimony is that the debt was due.

Appellant's contention that the sale was void because the decree was rendered September 25, 1939, and that proof of publication of the warning order, and the attorney *ad litem's* report, were not filed until March 25, 1940, is untenable because the attack is collateral and recitals necessary to jurisdiction are in the decree. It was a final order from which an appeal might have been taken. *Parker* v. *Bodcaw Bank,* 161 Ark. 426, 256 S. W. 384.[8] There was no effective appeal from the decree of September 25, 1939, because the record did not reach this court for a year after the decree was rendered. Therefore, we have only to consider the appeal from action

___

[7] R. H. Maddox was cashier and vice-president of DeWitt Bank & Trust Company.

[8] The first headnote to the Parker-Bodcaw Bank case is: "A decree foreclosing a mortgage and a later decree confirming the foreclosure sale were both final and appealable." The second headnote reads: "Where a decree foreclosing a mortgage was rendered on September 22, 1922, and a decree confirming the sale on December 21, 1922, an appeal perfected on March 29, 1923, was too late to bring up for review the decree of September 22, 1922."

of the court in overruling exceptions and confirming the sale.

*Second.*—While a junior mortgagee has no authority to foreclose a prior mortgage by the mere process of making the prior mortgagee a party defendant, the decree in the case at bar contains language directing that the rights of all parties to the suit "be forever foreclosed," and finds that the purchaser shall take title "free from any and all claims." What authority there may have been for the court to make this order is not a subject of review in this appeal. It must be presumed, on collateral attack, that the authority did exist. Action of the loan association in giving Maddox a written statement of its account implies an understanding that its interests were being protected by affirmative action. If it objected to the decree dissent should have been expressed at the time it was rendered. The association does not complain now, and Mrs. Carnes cannot complain for it.

Affirmed.